**Opinion issued April 21, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-14-00562-CV**

_____

**ZUEHL LAND DEVELOPMENT, LLC, DOROTHY GOLDING AND DIANE WIEMANN, Appellants**

**V.**

**ZUEHL AIRPORT FLYING COMMUNITY OWNERS ASSOCIATION, INC., Appellee**

---

**On Appeal from the 274th District Court**
**Guadalupe County, Texas[1]**
**Trial Court Case No. 08-1872-CV**

---

# O P I N I O N

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this court. *See* Misc. Docket No. 14–9121 (Tex. June 23, 2014); *see also* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases). We are unaware of any conflict between precedent of the Fourth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

This is a dispute between a group of landowners and a homeowners' association for a subdivision immediately adjacent to the landowners' properties. The landowners were using one of the subdivision's roads to access their land. The homeowners' association claimed that the road was private and built a fence along its edge, thereby blocking access to the adjacent lands from the subdivision's road. The ensuing litigation between the landowners and the homeowners' association has lasted over 10 years, devolving into what one of the parties' attorneys termed "a nuclear war."

This appeal follows the entry of an agreed partial summary judgment addressing the merits of the litigants' dispute and two subsequent orders concerning peripheral issues, i.e., the denial of attorney's fees authorized to prevailing parties and the imposition of sanctions against one of the litigants. Only these two peripheral issues are being appealed.

In two issues, a subset of the landowners contend that the trial court erred by (1) denying their motion for attorney's fees under section 5.006 of the Texas Property Code, which mandates a fee award to a prevailing party in an action based on a breach of a restrictive covenant and (2) imposing sanctions against one particular landowner for bad-faith discovery and pleadings abuses.

We reverse and remand.

## Background

This case has a complex and lengthy history. But because neither party appeals the final resolution of the merits of their dispute, we will provide only an overview of the relationship between the parties, the two pieces of land involved in their dispute, and the ultimate resolution of the merits of the case.

At one time, Dorothy Golding and her late husband owned a 233-acre parcel of land that contained a large aircraft runway. The paved runway was much wider than needed for small, personal aircraft; therefore, Golding narrowed it and used the outer strip of paved area as an aircraft taxiway and roadway to access other portions of her land. Over time, Golding sold portions of her land to individual buyers who wanted access to the runway. The area came to be known as the Zuehl Flying Community.

In 1998, Golding had the community's land platted. The plat map shows the runway and attached taxiway/roadway marking the edge of the community subdivision. All of the roads within the subdivision, including the outer strip of the runway, are labeled Lot 119. The plat states that all streets within the subdivision are dedicated to public use.

In 2003, Golding formed a neighborhood association, the Zuehl Flying Community Property Owners' Association, to control the common areas within the

subdivision. She conveyed Lot 119 and other common areas to the neighborhood association she created.

Golding filed in the Official Real Property Records of Guadalupe County a Declaration of Covenants, Conditions, and Restrictions[2] for the Zuehl Flying Community Subdivision. The Declaration states, in relevant part, "No fence will be placed within ten (10) feet of any taxiway." It also provides that the association has the right to "restrict access to Zuehl Flying Community and/or to fence the perimeter of the Subdivision for security reasons . . . ."

Not all of Golding's 233 acres were included in the subdivision. Golding reserved 40 acres of land as unplatted, undeveloped rural land. That 40 acres was immediately adjacent to the runway's taxiway/roadway. In other words, the perimeter of the subdivision ran between the taxiway/roadway and Golding's 40 acres.

Over time Golding sold pieces of her 40 acres to individual buyers. Ownership of that land did not include membership in the community or its homeowners' association. Nonetheless, the landowners who bought portions of the 40 acres used the subdivision's taxiway/roadway to access their lands.

In 2003, the association built a fence along the perimeter of the subdivision. The fence ran alongside the taxiway/roadway, was within 10 feet of the taxiway,

---

[2]     We will refer to this document as "the Declaration" or "the restrictive covenants."

4

and blocked access to the 40 acres from the subdivision. The landowners maintained that the taxiway/roadway was public or, alternatively, private and subject to an easement for accessing the 40 acres. Litigation between the association and various collections of landowners ensued.

Over the course of the next few years, the fence was taken down, rebuilt, subjected to a court order requiring a gate for access to adjacent lands, then removed again. Over the same period of time, the parties litigated in state and federal court and presented their dispute to a mediator followed by an arbitrator. Multiple orders were entered; some conflicted. At least one order was voided for vagueness. In the end, the substantive issues between the parties—i.e., whether the roadway was public or private and whether the association had authority to erect a fence alongside the roadway to block access—were decided through an agreed partial summary judgment.

We turn now to addressing the landowners' challenges to the two orders entered after partial summary judgment was granted on the merits.

**Prevailing Party Attorney's Fees**

In the first issue, the landowners argue that they are entitled to attorney's fees as the prevailing party.

## A.     Background facts relevant to prevailing party status

In the early stages of the litigation, the trial court issued a temporary injunction enjoining the association "from fencing any property at Zuehl Airport along the boundaries of the easement commonly described as Lot 119, i.e., the Common Area." An agreed judgment was entered in 2006, following mediation, allowing the association "to fence the boundary of the platted subdivision . . . and amend the Covenants, Conditions and Restrictions" if such amendment were approved of by at least 75 percent of the association's members. The association submitted to its membership a proposed amendment of the Declaration that would have permitted the association to rebuild a fence alongside the taxiway. The proposal failed to garner enough votes to pass. The fence was not rebuilt.

Later, in 2008, the association rebuilt the fence. This resulted in two separate lawsuits being filed. In the first, the association obtained a temporary injunction preventing defendant landowners from removing or otherwise tampering with the fence. In the second suit, other landowners sued the association for violating the Declaration by constructing a fence within 10 feet of a taxiway. The suits were consolidated and referred to arbitration, by agreement. The arbitrator voided the 2006 agreed judgment for vagueness and found that, as an interim resolution, the association should be permitted to keep the fence but the landowners should be

6

allowed to tie in a gate to access their lands adjacent to the subdivision. The trial court adopted the arbitrator's decision.

In 2011, the live pleading for the landowners—including Dorothy Golding and James MacIvor, both of whom owned lots within the subdivision and portions of the 40 acres adjacent to the subdivision—sought a declaration that the association breached the restrictive covenant prohibiting a fence within 10 feet of a roadway. The petition also asserted an easement right to access the 40 acres from the roadway/taxiway referred to by the parties as Lot 119. Finally, the petition sought attorney's fees under section 5.006 of the Property Code, Chapters 37 and 38 of the Civil Practice and Remedies Code, and common law.

The parties settled their dispute and submitted to the trial court an agreed partial summary judgment. The agreed order was entered in June 2012. It contains various declarations, including that the roadway/taxiway is a private road burdened by an easement for access to the 40-acre adjoining land, that the association's Declaration of restrictions does not allow a fence next to a taxiway, and that, while a boundary fence is permissible under the Declaration, it cannot interfere with the easement for use of the taxiway/roadway.

The agreed order states that the association voluntarily removed the fence before entry of the order. Because the fence no longer presented an on-going dispute in need of resolution, the order denies all tort claims and all claims for

breach of the restrictive covenants. The agreed order states that the parties take nothing on their breach of covenant claims, except it "reserves for further consideration the parties' competing claims for attorneys' fees" under section 5.006 of the Property Code. The agreed order then states, "Notwithstanding the foregoing . . . construction of any fence or other barrier restricting the free and unimpeded use of the easement . . . is prohibited."

In January 2014, the association moved for entry of final judgment, specifically arguing that, because the case had been settled, no party prevailed and no attorney's fees were authorized under section 5.006 of the Property Code. The landowners filed a response requesting that attorney's fees be awarded to them. Following a hearing, the trial court entered a final judgment denying attorney's fees to the landowners.

**B.    Standard of review**

Statutory construction is reviewed de novo. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012). When construing a statute, the primary objective is to ascertain and give effect to the Legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (West 2013); *see TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To discern that intent, we begin with the statute's words. TEX. GOV'T CODE ANN. § 312.003 (West 2013); *see Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). "Undefined terms in a statute

8

are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439. "[I]f a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *Id.* "We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Id.*

Whether attorney's fees are available under a particular statute is a question of law, which we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

## C. Statutory provision

Section 5.006(a) of the Property Code states as follows:

> In an action *based on breach of a restrictive covenant* pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.

TEX. PROP. CODE ANN. § 5.006(a) (West 2014) (emphasis added).

## D. The landowners prevailed through settlement

The landowners argue that they prevailed in the litigation because, under the terms of the agreed partial summary judgment, the association is forbidden from erecting the fence that they sought to have removed throughout the multi-year litigation. The association argues that the statutory phrase "based on breach of a

restrictive covenant" requires that the landowners prevail on their breach claim to be considered prevailing parties. According to the association, the landowners did not prevail because the agreed partial summary judgment expressly denied their claim for breach of the restrictive covenant and they were not "vindicated by the judgment rendered." *See Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex. App.—Dallas 2004, no pet.).

The Texas Supreme Court addressed "prevailing party" status in *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650 (Tex. 2009). In that case, the parties' contract allowed for attorney's fees to the prevailing party but did not define that term. The Court held that a party prevails if the court awards it monetary or equitable relief—in other words, "something that materially alters the parties' legal relationship." *Id.* at 652, 655. The Court quoted, with approval, the standard used by the United State Supreme Court in *Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566 (1992), to analyze prevailing-party status under a federal statute permitting attorney's fees. *KB Home*, 295 S.W.3d at 654. There, the Supreme Court held that, to qualify as a prevailing party, the plaintiff

> must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant . . . or *comparable relief through a consent decree or settlement . . .* [that] directly benefit[s] him at the time of the judgment *or settlement*. Otherwise the judgment or settlement cannot be said to "affect the behavior of the defendant toward the plaintiff."

10

*Farrar*, 506 U.S. at 111, 113 S. Ct. 573 (emphasis added). Based on that federal standard, the Texas Supreme Court held, in *KB Home*, that, because the party seeking attorney's fees "recovered no damages[,] . . . secured no declaratory or injunctive relief[,] . . . *obtained no consent decree or settlement* in its favor[,] . . . [and] received nothing of value of any kind, certainly none of the relief sought in its petition," it did not qualify as a prevailing party. *KB Home*, 295 S.W.3d at 655.

Two years later, the Texas Supreme Court specifically held that a party does not have to obtain a favorable ruling from a court to "prevail." *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). The Court held that "a defendant is a prevailing party when a plaintiff nonsuits a case with prejudice" because the res judicata effect of a nonsuit with prejudice "works a permanent, inalterable change in the parties' legal relationship to the defendant's benefit." *Id.* at 868–89. The Court further held that a dismissal without prejudice can cause the defendant to have prevailed if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits. *Id.* at 870. As these holdings demonstrate, settlements and other events that do not involve a finding of breach or liability can create "prevailing party" status.

Here, the agreed order denied the parties' competing breach of restrictive covenant claims. The order also denied the parties' requests for injunctive relief

because the association had already removed the fence before requesting entry of the agreed order:

> [T]he court has received assurances from all parties and counsel that the Association voluntarily removed the subject fence prior to entry of this Order. Accordingly, and in light of the foregoing declarations of this Court concerning the subject fence, the Court finds that there exists no probably risk of imminent, and/or irreparable injury . . . . Likewise, since Defendant has voluntarily removed the fence, there exists no risk of harm . . . . Accordingly, the parties' requests for injunctive relief are hereby DENIED, and it is ORDERED, ADJUDGED and DECREED that all parties take nothing by way of their claims for injunctive relief asserted in this lawsuit.

Nonetheless, the trial court's order contains declarations that are directly relevant to the denied claims, beneficial to the landowners' litigation position, and binding on the association. For example, the agreed order declared that the association's restrictive covenants "do not authorize or provide any legal basis for the fence" because the fence location is within 10 feet of a taxiway and would interfere with easement rights for access to the 40-acre adjoining land. Following the denial of injunctive relief, the order reads:

> *Notwithstanding the foregoing*, Plaintiffs and Defendant, by approving this Partial Summary Judgment, understand and agree to abide by the terms of this Judgment and that *the construction of any fence* . . . restricting the free and unimpeded use of the easement [to the adjoining land] over and across Lot 119, as expressly recognized in this Judgment, *is prohibited*. (emphasis added)

This case presents the unusual circumstance of an order that purports to deny all causes of action and requests for injunctive relief but, at the same time and as a

12

result of a settlement agreement between the parties, prohibits the very conduct alleged to constitute a breach—construction of a fence that blocks access to the landowners' property.

In our view, this situation is analogous to that found in *Norton v. Deer Creek Property Owners Ass'n, Inc.*, No. 03-09-00422-CV, 2010 WL 2867375, at *8 (Tex. App.—Austin July 22, 2010, no pet.) (mem. op.). A homeowner was sued by her homeowners' association for failing to remove a gazebo that the association alleged was in violation of restrictive covenants. *Id.* at *2. The homeowner removed the gazebo before the trial date. *Id.* Without an ongoing violation of the restrictive covenants at the time of trial, the trial court did not make a ruling whether the homeowner had breached. *Id.* at *3. At trial, the homeowner agreed she would not reconstruct the gazebo. *Id.* The trial court entered a permanent injunction requiring that she not. *Id.* at *8. On appeal, the homeowner argued that the association was not entitled to prevailing-party attorneys' fees because the gazebo had been removed before trial. *Id.* at *7. The appellate court rejected her argument, holding that the trial court did not err by awarding section 5.006 attorney's fees. *Id.* at *8–9.

Similarly, here, the removal of the fence obviated the need to determine whether the association breached the restrictive covenant. But the order goes on to declare, "notwithstanding" that issue, the construction of a fence at that location is

13

a violation of the restrictions and is prohibited in the future. Thus, the parties resolved by settlement what the landowners were seeking to achieve through trial. That the case resolved favorably for them through a settlement and consent decree instead of a jury trial and a finding of breach does not prevent the landowners from having prevailed. *See KB Home*, 295 S.W.2d at 654–55 (stating that party can prevail by obtaining "comparable relief through a consent decree or settlement" (quoting *Farrar*, 506 U.S. at 111, 113 S. Ct. at 573)); *see also Epps*, 351 S.W.3d at 867 (holding that party cannot avoid causing its opponent to obtain "prevailing party" status by nonsuiting to avoid adverse judgment).

Based on the agreed order, it cannot be said that the landowners "received nothing of value of any kind" or "left the courthouse empty-handed." *KB Home*, 295 S.W.3d at 655; *Norton*, 2010 WL 2867375, at *8. The agreed order "materially alter[ed] the legal relationship between the parties" by prohibiting the association from placing another fence in the objected-to area. *KB Home*, 295 S.W.3d at 654; *Norton*, 2010 WL 2867375, at *8.

Under section 5.006, an award of reasonable attorney's fees to a prevailing party is mandatory. TEX. PROP. CODE ANN. § 5.006; *Inwood N. Homeowners' Ass'n, Inc. v. Meier*, 625 S.W.2d 742, 744 (Tex. App.—Houston [1st Dist.] 1981, no writ); *Mitchell v. LaFlamme*, 60 S.W.3d 123, 131 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The reasonableness of the fee is determined by considering

14

"(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the expertise, reputation, and ability of the attorney; and (4) any other factor." TEX. PROP. CODE ANN. § 5.006(b) (West 2014); *Haas v. Ashford Hollow Cmty. Improvement Ass'n*, 209 S.W.3d 875, 886–87 (Tex. App.—Houston [14th Dist.] 2006, no pet.) The amount of the award is a question of fact that the trial court must resolve on limited remand. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991); *Inwood N. Homeowners' Ass'n*, 625 S.W.2d at 747.

Having concluded that the landowners are prevailing parties, we sustain their first issue, reverse the trial court's order denying attorney's fees, and remand the attorney's fee issue for an evidentiary hearing to determine the amount of attorney's fees reasonably incurred by the landowners to obtain the relief granted in the order, considering the section 5.006(b) factors.

## Sanctions

In the second issue, Golding challenges the sanctions order entered against her.

### A.    Facts relevant to the sanctions issue

Before the merits of the case were settled by an agreed order, both parties filed motions for summary judgment. The landowners attached affidavits to their motion, along with various documents described in the affidavits, from Dorothy Golding and James MacIvor. The affidavits detailed the two landowners' past

15

transactions and their ownership interests in lands within the subdivision and the adjacent 40 acres.

Both affidavits were executed in September 2011. Both indicated that (1) MacIvor had executed contracts for deeds to purchase a portion of the 40 acres from Golding, (2) the transactions had not been completed and a warranty deed had not been executed, and (3) the contracts for deed referenced an existing easement right for use of the taxiway/roadway to access portions of the 40 acres. According to the landowners, the language in these contracts established one basis from which the landowners in the 40 acres could claim a right to access their land.

The next month, the association moved to strike the two affidavits from the summary-judgment evidence because Golding and MacIvor had been hiding information regarding the status of the sale contemplated in the contracts for deed. According to the affidavit, the sale was still pending. In truth, Golding sold that land to MacIvor in 2009—while this litigation was pending and using outside counsel not involved in the litigation. According to the association, Golding and MacIvor were hiding these documents and lying about the status of the land sale in their affidavits because the omission of easement language in the final deed documents conclusively negated the landowners' factual and legal argument that an easement existed.

Golding and MacIvor responded by characterizing their misstatements and omissions as admittedly "incorrect" yet "legally insignificant." According to Golding and MacIvor, whether one or the other owned the land had no effect on their legal claims or the association's defenses because the landowners were claiming an easement by reservation, not an easement by necessity. Golding and MacIvor tendered "revised and corrected affidavits" reflecting the earlier completed sale of the land.

A hearing was held in December 2011, before the parties resolved the merits of their dispute. At the hearing, in addition to complaining about the affidavits, the association argued that Golding failed to produce the final sale document during discovery even through it was directly responsive to a pending request for production. The association further pointed out that Golding and MacIvor had the exact same misstatements/omissions in their affidavits and argued that it was unlikely both had forgotten the same transaction. According to the association, this evidenced a conspiracy to misstate the facts. Finally, the association informed the court that this was not the first allegation of perjury against Golding. Golding had pleaded guilty to perjury in 2009 and was on probation for that offense at the time she misstated the status of her land transaction with MacIvor.

Golding[3] was at the hearing. The trial judge requested that the lawyers advise her of her Fifth Amendment rights and presupposed that she would not testify. She did not.

The trial court found that both affidavits were made in bad faith and struck them. While this ruling may have compromised the landowners' ability to obtain summary judgment, it was not a "death penalty sanction" and did not strike pleadings necessary for the ultimate resolution of the litigation. The trial court specifically noted that its ruling only affected the summary-judgment motions. The court deferred to a later date the resolution of the amount of sanctions to be imposed.

The hearing to set the amount of the sanction was held after the agreed order resolving the merits of the case had been entered. Additionally, by the time the trial court held the hearing, the association had settled with MacIvor and was no longer seeking sanctions against him. The second hearing only addressed Golding's bad faith. Golding did not testify or offer evidence. Her counsel reiterated her position that the misstatements were not relevant to the main issue in the case—whether the association's Declaration disallowed a fence within 10 feet of the taxiway.

The association argued that Golding's affidavit, deposition testimony, and live pleadings all contained the same false assertions that she continued to own the

---

[3]     She was over 80 years old at the time.

18

property and that the contracts for deed were still valid agreements. The association sought attorney's fees for all aspects of the litigation that occurred between the date when the association's current counsel took over the litigation (June 2010) and the date when the trial court made its finding of bad faith (December 2011). The beginning date was not shown to be tied to the date of any misrepresentations.

In addition to attorney's fees for the 18-month period, the association sought its litigation costs, including the full cost to depose Golding and to pay an expert witness, the arbitrator's fee, and "filing fees, postage, [and] copies" in the case.

Golding did not testify at this hearing either. Her counsel argued that the inaccurate information was later corrected, did not change either side's position in the litigation, did not affect the issue of a restrictive covenant—which was at the heart of the litigation—and did not influence the terms of the agreed judgment. Golding's counsel challenged the association's failure to limit its sanction request to those fees and expenses directly related to the false affidavit.

Golding objected to the submitted evidence on attorney's fees, arguing that fees from 2010 were not relevant because they were incurred before Golding executed her affidavit. The trial court confirmed that he understood the objection:

> I get your objection . . . . and I'm reading straight from the [sanction] order . . . "It is further ordered that defendant is awarded reasonable and necessary attorney's fees to be assessed against Golding and

19

MacIvor incurred as a result of [their] failure to disclose in the respective affidavits and/or deposition testimony [the sale].

The parties then argued whether the requested fees were incurred because of the misstatements/omissions. Golding submitted that the only fees that the association incurred because of her misstatement were for "drafting the pleading pointing out to this court that the statement was incorrect."

The court found that the misstatements/omissions in the affidavits, discovery responses, and deposition "were intentional, fraudulent, bad faith acts against the Court under oath and therefore" supported sanctions, citing Rules of Civil Procedure 13, 166a and 215.

The trial court's sanction order concludes that Golding acted in bad faith in connection with her false affidavit, false deposition testimony, and failure to produce documents requested in discovery. It imposed a sanction against Golding in the amount of $30,528 under Rules of Civil Procedure 13, 166a(h), 215.2(b), and 215.3, as well as the court's inherent power.[4]

The trial court found that the evidence supported its conclusion of bad faith, including that (1) the affidavit was signed after the litigation concerning ownership and easement rights had already begun, (2) Golding and MacIvor used other counsel, not involved in the litigation, to prepare the sale documents, leaving

---

[4] At the hearing the association's counsel stated that he was also seeking a sanction under chapters 9 and 10 of the Civil Practice and Remedies Code; however, those provisions were not listed in the subsequent sanction order.

20

litigation counsel unaware of the sale, (3) the landowners amended their pleadings after the sale was complete without altering their factual assertions or legal arguments accordingly, (4) at her deposition and the arbitration proceeding, Golding asserted that the sale had not been finalized even though it had, thus contending that the contracts for deed language referencing an easement remained relevant, (5) Golding failed to produce the sale documents though directly relevant to pending discovery requests, and (6) neither Golding nor any other witness offered "any legitimate explanation" for the failure to disclose the sale.

The trial court also found relevant to its bad faith determination that MacIvor and Golding both omitted the same sale transaction from their affidavits. As explained in the court's order, "The corroborating omissions and misrepresentation suggests that Golding was part of a collaborative effort to conceal the existence of the General Warranty Deed dated May 28, 2009 from the Court and the Association." Finally, in support of the finding of bad faith, the trial court noted that, "at the time that she signed the summary judgment affidavit[] containing the false statements . . . Golding was actively serving a sentence of criminal probation based upon her plea of "Guilty" to the charge of Perjury in [a case] filed in the same county and judicial district as this suit."

The trial court acknowledged that not all of the claimed expenses were related to the misstatements. The court expressly stated that the sanctions were

21

intended to be "punitive" to address a "conspiracy to commit fraud on the Court." The trial court indicated that it would have imposed a sanction in the full amount requested by the association, with Golding and MacIvor jointly and severally liable, had MacIvor not already settled but, instead, awarded one-half of the amount requested because only Golding remained in the suit.

## B.    Standard of review

We review a sanction order for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (sanctions under Rule 13); *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (sanctions under court's inherent power); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004) (sanctions under Rule 215); *Ramirez v. Encore Wire Corp.*, 196 S.W.3d 469, 476 (Tex. App.—Dallas 2006, no pet.) (sanctions under Rule 166a(h)). An appellate court may reverse a trial court's ruling imposing a sanction only if the trial court acted without reference to any guiding rules and principles, such that the ruling was arbitrary or unreasonable. *Low*, 221 S.W.3d at 614. When reviewing matters committed to the trial court's discretion, an appellate court may not substitute its own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court will not be held to have abused its discretion merely because it decided a discretionary matter differently than the reviewing appellate court would have in a similar circumstance. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

## C.    Challenge to whether sanctions were warranted

The sanction order identifies four sources of support for the trial court's ability to sanction Golding's conduct. These include Rules of Civil Procedure 13, 166a, and 215, and the trial court's inherent power.

A trial court may impose sanctions if a pleading is groundless and either brought in bad faith or for the purpose of harassment. TEX. R. CIV. P. 13. A pleading is groundless if it has "no basis in . . . fact." *Id.* Bad faith is not simply bad judgment or negligence; it is the "conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex. App.—Dallas 2003, no pet.); *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex. App.—El Paso 1994, writ denied). Courts presume that filings were made in good faith. TEX. R. CIV. P. 13; *Low*, 221 S.W.3d at 614. The party moving for sanctions must overcome that presumption. *Id.* A trial court must examine the facts and circumstances in existence at the time the pleading was filed to determine whether sanctions are appropriate. *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Rule 215 permits a trial court to impose a sanction on a party that fails to comply with a discovery request in the amount of "reasonable expenses, including attorney fees, caused by the failure." TEX. R. CIV. P. 215.2(b)(8). The sanction is

23

also available to redress an abuse of the discovery process in seeking, making, or resisting discovery. TEX. R. CIV. P. 215.3.

Rule 166a allows for sanctions against a party who presents an affidavit in support of or opposition to a summary-judgment motion in bad faith or solely for the purpose of delay. TEX. R. CIV. P. 166a.

Finally, a trial court has inherent power to discipline an attorney's behavior. *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997). This includes the power to sanction a party's bad-faith abuse of the judicial process, even if not covered by a particular rule or statute. *Id.*; *Pine v. Deblieux*, 405 S.W.3d 140, 150 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Lawrence v. Kohl*, 853 S.W.2d 697, 700 (Tex. App.—Houston [1st Dist.] 1993, no writ). Inherent power exists only to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as significant interference with the traditional core functions of Texas courts. *In re Tex. Dept. of Family and Protective Servs.*, 415 S.W.3d 522, 530 (Tex. App.—Houston [1st Dist.] 2013, mand. denied).

Golding contends that the trial court "could not have properly found that Golding acted with bad faith" to impose a sanction absent direct evidence of her motive. According to Golding, without her testimony on the issue, her motives remain unknown. Further, because her "incorrect statements" did not actually

24

improve her legal position, she argues that there was no evidence from which the trial court could have found bad faith.

"Improper motive is an essential element of bad faith." *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "The party moving for sanctions must prove the pleading party's subjective state of mind," which requires an evidentiary hearing to provide the trial court necessary evidence of the pleading party's motives and credibility. *Id.* at 480.

Contrary to Golding's assertion, intent can be shown by circumstantial evidence. *See Owen v. Jim Allee Imp., Inc.*, 380 S.W.3d 276, 289–90 (Tex. App.—Dallas 2012, no pet.); *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 194 (Tex. App.—Texarkana 2011, no pet.); *Schexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441–42 (Tex. App.—Austin 1997, no pet.). Direct testimony from Golding was not necessary for the trial court to determine that she acted in bad faith. *See Schexnider*, 953 S.W.2d at 442 (affirming finding of bad faith based on reasonable inference drawn from evidence without direct testimony from actor concerning his intent).

There was ample circumstantial evidence to support the trial court's implied finding that Golding had an improper motive in making a misstatement in her 2011 amended pleading, deposition, and affidavit. The evidence included the warranty deed evidencing the undisclosed sale of the land from Golding to MacIvor in 2009;

25

Golding's affidavit signed in 2011 stating that she was the owner of the land when, in truth, she had already sold it to MacIvor; Golding's deposition testimony that the sale had not been completed; and the earlier contracts for deed containing easement language on which Golding and MacIvor were relying. There also was evidence that Golding had been charged in 2009 with aggravated perjury and securing execution of a document by deception; she pleaded guilty to perjury in 2010; and she was on probation for that offense when, in 2011, she amended her pleadings, gave her deposition, and filed her affidavit—all misstating ownership of the land.

We conclude that the trial court did not abuse its discretion in concluding from the aggregate evidence that Golding acted with an improper motive and in bad faith by misstating that she owned the property and that the real property records that referenced an easement continued to be the controlling documents. The trial court did not abuse its discretion in concluding that the pleading misstating those facts was groundless.

These conclusions are bolstered by the timing involved. The sale occurred after the litigation has commenced, and Golding's affidavit was executed after she had already been found guilty of perjury. These conclusions are further supported by the corroborating misstatements and omissions found in MacIvor's affidavit.

26

Accordingly, we overrule Golding's challenge to the trial court's determination that sanctions were warranted. We turn next to whether the trial court abused its discretion in setting the amount of the sanctions.

## D. Challenge to sanction amount as arbitrary

### 1. Waiver

As an initial matter, the association contends that Golding has waived error concerning the amount of the sanctions awarded by failing to file a post-judgment motion with the trial court. *See* TEX. R. APP. P. 33.1(a) (providing that, as prerequisite for complaint on appeal, party must make trial court aware of complaint by timely request, objection or motion and provide opportunity to address error). Rule 33.1 requires that a party make its complaint to the trial court to preserve error; however, a post-trial motion is not the only mechanism by which error can be preserved. *Id.*; *see* TEX. R. CIV. P. 324(b) (listing complaints for which motion for new trial is prerequisite for complaint on appeal, but not including in list error asserted here). An objection that makes the trial court aware of the complaint suffices.

Golding objected to the evidence submitted by the association in support of its sanctions request, specifically arguing that fees incurred before the misstatements were not related to her conduct. We conclude, based on this record,

27

that Golding's objection adequately informed the trial court of her complaint and was sufficient to preserve error.

## 2. Amount of sanctions imposed

Golding argues that her sanctions are not "just" because there is not a direct nexus between the offense and the sanction imposed and because the sanction was more severe than necessary.

Rule 166a(h) requires that the amount of sanction imposed be limited to that reasonable caused by the filing of the bad-faith affidavits. TEX. R. CIV. P. 166a(h). Rule 215 requires that a sanction be "just." TEX. R. CIV. P. 215.2(b). "Due process requires . . . that there be a direct nexus between the sanction and the sanctionable conduct." *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 373 (Tex. 2014). Further, the sanction must be "no more severe than necessary to satisfy its legitimate purpose." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *Low*, 221 S.W.3d at 620. In other words, the "punishment should fit the crime," *TransAmerican*, 811 S.W.2d at 917, and be limited to those fees "incurred because of the sanctionable conduct." *See Low*, 221 S.W.3d at 621.

A fee award that goes beyond that incurred because of the sanctionable conduct and is "essentially the total" of fees incurred is an abuse of discretion. *See Knoderer v. State Farm Lloyds*, No. 06-13-00027-CV, 2014 WL 4699136, at *14 (Tex. App.—Texarkana Sept. 19, 2014, no pet.) (mem. op.); *Para-Chem S., Inc. v.*

28

*Sandstone Prods, Inc.*, No. 01-06-01073-CV, 2009 WL 276507, at \*11 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, pet. denied) (mem. op.) ("Any attorney's fees awarded as a sanction should have been limited to those fees attributable to the harm or prejudice caused by [the] sanctionable conduct.").

The two sides disputed the importance of Golding's misrepresentations and the extent they impacted the legal arguments and added to the expense of the case. Golding argued that the landowners had "two good arguments" for prevailing and that the change in title was irrelevant to either of those. She, therefore, argued that little of the association's fees and expenses were related to the misstatements. The association responded that at least one of the landowners' legal arguments relied entirely on the easement language that was superseded by the hidden, subsequent sale.

### a.    Time period relevant to sanctions

Regarding the length of time from which to award sanctions, the association argued that Golding took the "fraudulent position [since] the inception of the lawsuit, which [was] filed back in 2008." Yet we do not find in the record any misstatement made earlier than 2011. The original, first-amended, and second-amended petitions do not assert that there was a contract for deed instead of a warranty deed. The issue of conveyance of that particular piece of land was not raised in those pleadings. The third-amended petition is not in the appellate record,

29

and we, therefore, do not know if it contained misstatements. It is not until the fourth-amended petition, filed in 2011, that we locate a misstatement in a pleading regarding ownership of the land MacIvor bought from Golding. This is the same year that Golding gave her deposition testimony, filed her summary-judgment motion, and attached the affidavit containing the same misstatements. Accordingly, on the record before us, we cannot agree that sanctions were proven recoverable for any period earlier than 2011.

### b.    Portion of fees linked to sanctionable conduct

Regarding the portion of incurred fees and expenses that were attributable to the sanctionable conduct, the association requested all fees and expenses for the designated 18-month period without differentiating the fees incurred defending against the contractual easement language from those incurred defending against the breach of restrictive covenant issue. To the extent the trial court did reduce the fee amount by half, it clearly stated that the reduction was not made to reflect the amount of fees caused by the sanctionable conduct, as required by Rule 215, but, instead, to account for the settlement between the association and MacIvor. Further, the trial court stated that the award was meant to be "punitive"—a penalty not tied to sanctionable conduct or limited to those expenses incurred as a result of that conduct. *See* TEX. R. CIV. P. 215.2(b)(8).

All attorney's fees and expenses incurred from the arbitrary date of June 2010 to December 2011 were not shown to be related to Golding's misrepresentation. As Golding's own counsel made clear at the earlier hearing, the easement claim based on the contracts for deed language was only one of her theories. Other theories did not depend on the contracts for deed language or who owned which adjoining lots. Further, the ultimate resolution of the merits of the litigation did not turn on whether there was an easement by virtue of the deed documents. Instead, the issue was whether the neighborhood association's Declarations restricted the association from constructing a fence along that particular section of the subdivision's perimeter.

Accordingly, we conclude that the trial court abused its discretion by imposing sanctions that were tied to an arbitrary date and were not reduced based on any determination of relatedness between the fees and expenses incurred and the sanctionable conduct. *See TransAmerican*, 811 S.W.2d at 917; *Low*, 221 S.W.3d at 620; *Knoderer*, 2014 WL 4699136, at \*14; *Para-Chem S.*, 2009 WL 276507, at \*11. The amount of the sanctions was arbitrary and unreasonable. We, therefore, reverse the trial court's order imposing sanctions, vacate that order, and remand the sanction issue for further determination. *See State v. PR Inv. & Specialty Retailers, Inc.*, 180 S.W.3d 654, 676 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (concluding that sanction was excessive and remanding for trial

31

court to consider what amount of monetary sanctions would be just and not excessive); *Felderhoff v. Knauf*, 828 S.W.2d 272, 274 (Tex. App.—Fort Worth 1992, writ denied) (remanding sanctions issue after concluding that sanctions imposed were excessive); *Cf. Low*, 221 S.W.3d at 620–21 & n.5 (listing factors to guide trial court, on remand, in determining sanction amount available under Civil Practice and Remedies Code Chapter 10).

## Conclusion

We sustain both issues. We reverse the trial court's order denying the award of attorney's fees under section 5.006. We overrule the challenge to the trial court's determination that sanctions were warranted, but we sustain the challenge to the amount of sanctions imposed. We, therefore, reverse and vacate that portion of the sanctions awarding fees.

We remand the cause to the trial court for new evidentiary hearings to determine a reasonable attorney's fee award and a just sanction.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

32