# NO. 12-23-00060-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PAUL V. ANDERSON AND PAUL ANDERSON PLLC, APPELLANTS* | § | *APPEAL FROM THE* |
| | § | *COUNTY COURT AT LAW* |
| *V.* | | |
| *ALEJANDRA RODRIGUEZ, APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Paul V. Anderson and Paul Anderson PLLC (collectively Anderson) appeal the trial court's order awarding sanctions in favor of Appellee Alejandra Rodriguez. Anderson raises seven issues on appeal. We reverse and remand.

## BACKGROUND

This case arises from a noncompete agreement between Rodriguez and her former employer, Blue Lotus Tattoo, which is owned by Stephen Buelow. Rodriguez worked at Blue Lotus as an apprentice-tattoo-artist at its location in Lufkin, Texas from March 22, 2022, until her apprenticeship was terminated in late July 2022. Thereafter, Rodriguez began working for Casey's Tattoo in Nacogdoches, Texas.

On September 7, Buelow's attorney, Anderson, confronted Rodriguez at Casey's Tattoo with the noncompete agreement. According to Rodriguez, Anderson told her that she needed to decide whether she should continue working for Casey's Tattoo in light of the agreement and to contact him by the following Monday to apprise him of her decision.

Rodriguez contacted Attorney Connor Throckmorton to seek advice as to how to proceed. Throckmorton wrote Anderson a letter dated September 9, in which he informed

Anderson that he represented Rodriguez, questioned whether the noncompete agreement was legally enforceable, and advised that if there was any further dispute over the enforceability of the noncompete, he would, on Rodriquez's behalf, file a declaratory judgment action against Buelow and Blue Lotus Tattoo. That same day, Anderson responded by email, in which he, among other things, invited Throckmorton to contact him on his cell phone over the weekend. Throckmorton, instead, attempted to contact Anderson at his office during regular business hours. But ultimately, no phone conversation resulted.

On September 12, Anderson filed the instant suit on behalf of Buelow d/b/a Blue Lotus (collectively Buelow) against Rodriguez, by which he sought a declaratory judgment interpreting the enforceability of the noncompete agreement between the parties. Rodriguez filed a declaratory-judgment action against Buelow and Blue Lotus in an Angelina County District Court later that same day. In response to Buelow's petition, Rodriguez filed a "Motion to Dismiss for Lack of Jurisdiction," in which she argued, in pertinent part, as follows:

> This frivolous petition was frantically filed by Blue Lotus's lawyer on the same day Rodriguez filed an appropriate declaratory judgment action in the 159th District Court in Angelina County, Texas . . . . In a race to beat Rodriguez by "filing first[,]" Blue Lotus has knowingly made fraudulent statements to this Court to wrongfully impose jurisdiction without a factual basis. Blue Lotus and its lawyer know the venue is inappropriate [in Nacogdoches County], know their "contract" is unenforceable, and know this Court lacks subject matter jurisdiction. Thus, this action must be dismissed, as the appropriate action is pending in Angelina County District Court to determine the parties' [existing] rights and status under an unenforceable contract.

Four days later, Buelow filed a notice of nonsuit of his claims against Rodriguez.

Thereafter, Rodriguez filed a motion for attorney's fees as sanctions against Buelow and Anderson.[1] In her motion, she argued that Buelow filed the notice of nonsuit to avoid an unfavorable outcome and counterclaim. She further argued that an award of attorney's fees pursuant to Texas Civil Practice and Remedies Code, Chapter 10 is appropriate because Anderson filed the verified petition in Nacogdoches County, despite the fact that Rodriguez signed the noncompete agreement in and worked at the Blue Lotus location in Angelina County and, thus, he either (1) failed to make a reasonable inquiry into the facts or (2) made a reasonable

---

[1] The time during which the trial court has authority to impose sanctions on a party's motion is limited to the time period during which it retains plenary jurisdiction, even when the motion for sanctions is filed after notice of nonsuit is filed pursuant to Texas Rule of Civil Procedure 162. *See* ***Scott & White Mem'l Hosp. v. Schexnider***, 940 S.W.2d 594, 596 (Tex. 1996).

inquiry, lied to the Court, and hoped that opposing counsel would not make a reasonable inquiry into the facts.  As a result, she sought $11,309.94 in attorney's fees as sanctions.  Buelow filed a response and, following an evidentiary hearing, the trial court took the matter under advisement.

Thereafter, the trial court rendered an order granting Rodriguez's motion and ordering that Buelow pay Rodriguez's attorneys' fees in the amount of $5,500.[2]  The order further set forth that Paul V. Anderson and Paul Anderson, PLLC be held jointly and severally liable for the attorney's fees ordered to be paid.  Thereafter, Anderson filed a motion for new trial, which was overruled.  This appeal followed.

## SUBJECT MATTER JURISDICTION

In his sixth issue, Anderson argues that the trial court erred by ruling on Rodriguez's motion for sanctions without first determining whether it had subject-matter jurisdiction, which Rodriguez challenged in her motion.  Because the trial court did not rule on Rodriguez's motion, we will consider the issue as if it first was raised on appeal.

### Standard of Review and Governing Law

Subject-matter jurisdiction cannot be waived or conferred by agreement, and we have a duty to consider a question of subject-matter jurisdiction sua sponte because the district court's power to decide the merits, as well as our own, rests upon it.  *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 837 (Tex. App.–Austin 2010, no pet.).  The Texas Supreme Court has recognized that, when reviewing subject-matter jurisdiction for the first time on appeal, there is no opportunity to cure the defect.  *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 791 (Tex. App.–Houston [1st Dist.] 2012, no pet.).  Accordingly, we "must construe the petition in favor of the [pleading] party, and if necessary, review the entire record to determine if any evidence supports standing." *Id.*

Whether a court has subject matter jurisdiction is a question of law.  *Hendee v. Dewhurst*, 228 S.W.3d 354, 366 (Tex. App.–Austin 2007, pet. denied).  The determination of whether a trial court has subject matter jurisdiction begins with the pleadings.  *Id.*  The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause.  *Id.*

---

[2] Attached to the order was a two-page letter from the trial court, in which it set forth its findings related to the order granting attorney's fees as sanctions.

3

A contract may be construed in a declaratory-judgment action before breach occurs, regardless of whether further relief is or could be claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.003(a) 37.004(b) (West 2020); *MBM Fin. Corp v. Woodlands Oper. Co.*, 292 S.W.3d 660, 667 (Tex. 2009); *Bright v. Addison*, 171 S.W.3d 588, 606 (Tex. App.–Dallas 2005, pet. denied). But a declaratory judgment is available only if a real and substantial controversy exists between the parties, which requires a showing that litigation is imminent unless the contractual uncertainties are resolved judicially. *See Paulsen v. Tex. Equal Access to Justice Found.*, 23 S.W.3d 42, 46 (Tex. App.–Austin 1999, pet. denied). An action for declaratory judgment will lie when the fact situation manifests the presence of "ripening seeds of a controversy." *Save Our Springs All. v. City of Austin*, 149 S.W.3d 674, 683 (Tex. App.–Austin 2004, no pet.). This occurs where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy. *Id.*

**Discussion**

In the instant case, Anderson argues generally that the trial court lacked subject-matter jurisdiction over the suit he himself filed on Buelow's behalf, thus rendering the subsequent order on Rodriguez's motion for sanctions void. Thus, if any of Buelow's allegations in his petition vested the trial court with subject-matter jurisdiction, it retained its jurisdiction to consider the motion for sanctions.

As set forth above, a contract may be construed in a declaratory-judgment action before breach occurs, regardless of whether further relief is or could be claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.003(a), 37.004(b). In his pleadings, Buelow sought a declaratory judgment regarding the enforceability of the noncompete agreement. Further, the record reflects that Anderson confronted Rodriguez at Casey's Tattoo with the noncompete agreement. According to Rodriguez, Anderson told her that she needed to decide whether she should continue working for Casey's Tattoo in light of the noncompete agreement and to contact him by the following Monday to apprise him of her decision. Thereafter, Throckmorton wrote Anderson a letter dated September 9, in which he informed Anderson that he represented Rodriguez, questioned whether the noncompete agreement was legally enforceable, and advised that if there

4

was any further dispute over the enforceability of the noncompete, he would, on Rodriquez's behalf, file a declaratory judgment action against Buelow and Blue Lotus Tattoo.

The foregoing facts sufficiently present a situation, which manifests the presence of well-ripened "seeds of a controversy." *See Save Our Springs All*, 149 S.W.3d at 683. Accordingly, we conclude that there existed a justiciable controversy for Buelow's declaratory-judgment action against Rodriguez to seek an interpretation of the enforceability of the noncompete agreement. Anderson's sixth issue is overruled.


<u>**SANCTIONS**</u>

In his second issue, Anderson argues that the trial court abused its discretion in awarding attorney's fees as sanctions.

We review the imposition of sanctions pursuant to Texas Civil Practice and Remedies Code, Chapter 10 under the same standard we review sanctions under Texas Rule of Civil Procedure 13—abuse of discretion. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). We may reverse the trial court's ruling only if it acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *See Low*, 221 S.W.3d at 614; *Cire*, 134 S.W.3d at 838–39. To determine if the sanctions were appropriate or just, we must ensure there is a direct nexus between the improper conduct and the sanction imposed. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)). Generally, courts must presume that pleadings and other papers are filed in good faith. *See GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Id.* at 731.

Chapter 10 allows a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law. *See Low*, 221 S.W.3d at 614. Section 10.001 provides, in pertinent part, as follows:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

5

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2017). Under Section 10.001, the signer of a pleading or motion certifies that each claim, allegation, and denial is based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry. *See Low*, 221 S.W.3d at 615.

A trial court may not award sanctions on a basis not asserted in the motion for sanctions. *See Mann v. Kendall Home Builders Construction Partners I, Ltd.*, 464 S.W.3d 84, 93 (Tex. App.–Houston [14th Dist.] 2015, no pet.); *Polansky v. Berenji*, 393 S.W.3d 362, 369 (Tex. App.–Austin 2012, no pet.); *Greene v. Young*, 174 S.W.3d 291, 298–301 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (reversing sanctions because parties did not have notice of legal basis or conduct under consideration). Furthermore, before a court may exercise its discretion to shift attorney's fees as a sanction, there must be some evidence of reasonableness because without such proof a trial court cannot determine that the sanction is "no more severe than necessary" to fairly compensate the prevailing party. *Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709 (Tex. 2019); *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008); *see also Low*, 221 S.W.3d at 620 ("[A] sanction cannot be excessive nor should it be assessed without appropriate guidelines"). "Consequently, when a party seeks attorney's fees as sanctions, the burden is on that party to put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct." *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016).

If the court determines that attorney's fees as sanctions are appropriate, it shall describe in an order imposing a sanction under Chapter 10 the conduct the court determined amounted to a violation thereof *and* explain the basis for the sanction imposed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.005 (West 2017) (emphasis added). Due process requires that there be a direct nexus between the sanction and the sanctionable conduct. *See Nath*, 446 S.W.3d at 373; *Zuehl*

*Land Dev., LLC v. Zuehl Airport Flying Cmty. Owners Ass'n, Inc.*, 510 S.W.3d 41, 55 (Tex. App.–Houston [1st Dist.] 2015, no pet.).

**Discussion**

In the instant case, the trial court attached a letter directed to the parties to its order awarding sanctions. In that letter, it sought to describe the sanctionable conduct in violation of Chapter 10, in pertinent part, as follows:

> Mr. Anderson has made several statements (in pleadings and arguments) that cannot be supported by the evidence that was submitted. Such statements have been proven to be false. Examples include, but are not limited to: The Start date for Miss Rodriguez's employment with Mr. Buelow (different dates alleged in different pleadings--apparently Mr. Anderson now believes a later start date would be beneficial to establish contemporaneous knowledge of a Nacogdoches location); the fact that the case was non-suited based upon a settlement agreement (the court does not accept the concept of a settlement of the issues in this case that does not involve the opposing party in the litigation, further, the mention of a settlement came only after the motion to dismiss was filed, and perhaps is being used as a basis for the nonsuit in order to avoid responsibility); the start date for Mr. Buelow's Nacogdoches tattoo business (apparently Mr. Anderson believes it would be beneficial to his position if Miss Rodriguez began her new job in Nacogdoches [sic] after his client's Nacogdoches location had opened, and, further, it must be considered beneficial for Mr. Buelow to have been operating his tattoo business in Nacogdoches at the time the Employee Non-Compete Agreement was signed); and the location of Mr. Buelow's tattoo business in September of 2022 and earlier the evidence establishes that the Nacogdoches tattoo business was to begin in Oc[t]ober of 2022. The pleadings in this case as well as the Angelina County case contain similar factual allegations that have been proven to be false.

In sum, the instance of conduct the court determined to be the bases of its sanctions order consisted of Anderson's statements related to (1) the start date of Rodriguez's employment with Buelow, (2) the reason Anderson gave for nonsuiting the case (settlement), (3) the start date for Blue Lotus's Nacogdoches location, and (4) the location of Blue Lotus Tattoo during September 2022.

However, in her motion for Sanctions, Rodriguez limited her focus to statements related to (1) the Nacogdoches location of Blue Lotus Tattoo as set forth in Buelow's sworn pleadings for the purpose of establishing jurisdiction and venue in Nacogdoches County rather than Angelina County[3] and (2) Buelow's filing his notice of nonsuit following her Motion to Dismiss

---

[3] While the suggested purpose of the alleged misrepresentations is not set forth in Rodriguez's motion for sanctions, her motion repeatedly references her Motion to Dismiss for Lack of Jurisdiction. In that motion, she contends that Buelow "knowingly made fraudulent statements to [the trial court] to wrongfully impose jurisdiction without a factual basis" when Buelow and its lawyer knew "venue is inappropriate" in Nacogdoches County "and [knew the trial court] lacks subject matter jurisdiction." She further stated that Blue Lotus purposefully lied to the Court about its business location to establish a proper venue, which amounts to, in her words, "procedural fencing."

for Lack of Jurisdiction "to avoid an unfavorable outcome." The start date of Rodriguez's employment is not referenced as a false statement in her motion for sanctions. Nor is a start date for Blue Lotus's Nacogdoches location referenced in the petition.[4] Moreover, the trial court was required to explain the basis for the sanction imposed, i.e., the direct nexus between the sanction and the sanctionable conduct. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.005; ***Nath***, 446 S.W.3d at 373; ***Zuehl Land Dev., LLC***, 510 S.W.3d at 55.

Here, the purported misstatements regarding Rodriguez's start date and Blue Lotus Tattoo's Nacogdoches-location's start date are listed among several instances of sanctionable conduct underlying the trial court's award. But neither of these purported misstatements were raised in her motion for sanctions. Furthermore, the trial court made no attempt to explain the direct nexus between the sanction and the sanctionable conduct. *See* TEX. CIV. PRAC. & REM.

---

In her motion to dismiss, Rodriguez appears to conflate, somewhat, the concept of subject matter jurisdiction with the propriety of venue, which she also referenced several times in the Motion to Dismiss for Lack of Jurisdiction. She first argues that the purported invalidity of the contract deprives the trial court of subject matter jurisdiction. However, a person interested under a contract, whose rights are affected thereby, may seek determination of any question of construction *or validity* arising under the instrument and obtain a declaration of rights. *See* ***In re Gen. Agents Ins. Co. of America, Inc.***, 254 S.W.3d 670, 674 (Tex. App.–Houston [14th Dist.] 2008) (orig. proceeding) (emphasis added). Thus, Rodriguez's argument that the contract is invalid does not affect the trial court's subject matter jurisdiction. She further contends that Buelow lied to the court to establish proper venue, but she never moved to transfer venue. *See* TEX. R. CIV. P. 86. And while it is undeniable that Buelow referred to a Nacogdoches business location of Blue Lotus Tattoo in his petition, in three instances in the section of the petition entitled "Jurisdiction and Venue," he references only the address for Casey's Tattoo. The general venue statute provides that venue may lie in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) (West 2017). Contract claims generally accrue in any county where the contract was formed, where it was to be performed, *or* where it was breached. ***Killeen v. Lighthouse Elec. Contractors, L.P.***, 248 S.W.3d 343, 348 (Tex. App.–San Antonio 2007, no pet.) (emphasis added). Thus, it is unlikely that the presumption that Anderson, on Buelow's behalf, made these statements in support of venue in good faith has been overcome by Rodriguez's accusations that he made false statements for the purpose of "procedural fencing," because an arguably-reasonable interpretation of the law suggests that venue for Buelow's declaratory judgment action involving a contract claim is permissible in the county where the purported breach occurred, which precisely is what is alleged. *See* ***id.***

[4] Buelow did not refer to Blue Lotus's Nacogdoches location in his petition as "operational," "conducting business," or the like. Instead, he made three references to the business's Nacogdoches location—once in the introductory paragraph and twice more when referencing the distance between that location and Casey's Tattoo. Immediately after these latter two references, he referenced Blue Lotus's Lufkin location with regard to the distance between it and Casey's Tattoo. However, Buelow made no statement regarding which location of Blue Lotus Tattoo Rodriguez worked as an apprentice. After the hearing on Rodriguez's motion for sanctions, with the trial court's permission and without objection, Buelow filed a copy of the lease for the Nacogdoches location of Blue Lotus Tattoo, which demonstrates that Buelow accepted possession of the premises on August 22, 2022. Although the lease did not commence until October 1, it is questionable that the assertion that the business was "located" there as of the date Buelow took possession of the premises amounts to an irreparable misrepresentation, particularly when, despite Rodriguez's contentions, it was not set forth to establish venue. At the very least, such a statement is less-than-candid, which, though ill-advised, might better be addressed by a special exception and corrected by amendment. *See* TEX. R. CIV. P. 63, 91.

CODE ANN. § 10.005; *Nath*, 446 S.W.3d at 373; *Zuehl Land Dev., LLC*, 510 S.W.3d at 55. As a result, we face impediments to our ability to determine the propriety of the trial court's sanctions award. First, two stated instances of culpable conduct underlying the trial court's sanctions award cannot support the award because they were not raised in Rodriguez's motion for sanctions. Thus, we are unable to determine the extent to which the sanctions were attributable to those two instances versus the two instances set forth in her motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.005; *Nath*, 446 S.W.3d at 373; *Zuehl Land Dev., LLC*, 510 S.W.3d at 55; *see also Mann*, 464 S.W.3d at 93; *Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301. Second, despite Rodriguez's request for $11,309.94 in attorney's fees, which was supported by Throckmorton's affidavit and a case-activities report, which set forth the nature of the legal work he performed and time attributable to each instance of his performance, the trial court awarded only $5,500 in attorney's fees as sanctions with no explanation given for how it arrived at this reduced amount. Therefore, because we cannot determine the extent to which the sanctions awarded related to conduct made the subject of the motion for sanctions or any direct nexus between any appropriately sanctionable conduct and the sanctions ultimately awarded, we hold that the trial court abused its discretion in awarding attorney's fees as sanctions against Anderson.[5] Anderson's second issue is sustained.[6]

## DISPOSITION

Having overruled Anderson's sixth issue and having sustained his second issue, we *reverse* the trial court's judgement, *vacate* the order awarding attorney's fees as sanctions, and *remand* the cause for further proceedings consistent with this opinion.

---

[5] We acknowledge that a trial court has inherent power to discipline an attorney's behavior, which includes the power to sanction a party's bad-faith abuse of the judicial process, even if not covered by a particular rule or statute. *See Zuehl Land Dev., LLC v. Zuehl Airport Flying Cmty. Owners Ass'n, Inc.*, 510 S.W.3d 41, 54 (Tex. App.–Houston [1st Dist.] 2015, no pet.). However, here, the trial court's order indicates that it stems from Rodriguez's motion for sanctions, and there is no indication that the trial court intended to employ or, otherwise, gave Anderson notice of its intent to sanction him under its inherent powers.

[6] Having overruled Anderson's sixth issue and having sustained his second issue, we do not address his remaining five issues addressing whether: Rodriguez is judicially estopped from seeking relief in Nacogdoches County; the trial court abused its discretion in admitting Rodriguez's unauthenticated evidence in support of her motion for sanctions; the trial court abused its discretion in determining that Rodriguez was a "prevailing party;" the trial court abused its discretion in ruling on the motion for sanctions after Buelow's notice of nonsuit; and the trial court abused its discretion in overruling Anderson's motion for new trial. *See* TEX. R. APP. P. 47.1.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November15, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 15, 2023**

**NO. 12-23-00060-CV**

**PAUL V. ANDERSON AND PAUL ANDERSON PLLC,**
Appellants
V.
**ALEJANDRA RODRIGUEZ,**
Appellee

Appeal from the County Court at Law
of Nacogdoches County, Texas (Tr.Ct.No. CV2214736)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED, and DECREED by this court that the judgment be **reversed,** the order awarding attorney's fees as sanctions be **vacated**, and the cause **remanded** to the trial court **for further proceedings**; and that all costs of this appeal are hereby adjudged against the party incurring the same in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*