

# NUMBERS 13-24-00613-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **BAYLEE HIGGINBOTHAM,** | **Appellant,** |
| **v.** | |
| **ALEJANDRO BONILLA,** | **Appellee.** |

## ON APPEAL FROM THE 153RD DISTRICT COURT
## OF TARRANT COUNTY, TEXAS

## OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Opinion by Justice Fonseca**

Appellant Baylee Higginbotham appeals following a jury trial regarding a defamation claim. Appellant contends the trial court erred in denying her motions for sanctions against appellee Alejandro Bonilla's counsel. Specifically, appellant challenges by three issues that the trial court abused its discretion when it: (1) refused to hold evidentiary hearings on all three motions, (2) excluded appellant's exhibits for each

sanctions hearing, and (3) denied all of her motions. We affirm because appellant was not entitled to an evidentiary hearing prior to denial of her motions for sanctions, and the trial court did not abuse its discretion when it declined to sanction appellee's counsel.[1]

## I. BACKGROUND

The underlying suit in this appeal was a defamation action involving highly sensitive facts. Appellant was a former employee of appellee's salon business and eventually wound up in a sexual/romantic relationship with him while she worked at his salon. There is some dispute regarding whether the relationship was consensual, which was partially the subject of the suit. Regardless of the relationship's exact nature, it eventually ended. After the relationship's conclusion, appellant made an online blog post accusing appellee of being a sexual predator and a rapist, and of grooming her into being in a relationship with him. Others joined appellant in posting online and talking about appellee's alleged behavior.

Appellee filed a petition in April 2022 seeking damages and injunctive relief. This petition was the first of many filings and actions throughout the litigation that appellant alleges were improper and sanctionable conduct. In response, appellant filed an anti-SLAPP motion and later her first motion for sanctions. The first motion for sanctions accuses appellee's counsel of asserting "inflammatory, personal insults at [appellant] and [appellant's] counsel in almost every pleading, notice, conference, or other interaction with the Defense." Based on our review, we found concerning language and conduct throughout the record. This background will remain confined to the specific instances

---

[1] This appeal was transferred from the Second Court of Appeals in Fort Worth pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

discussed in our resolution of appellant's issues, though there are many more instances of potentially improper conduct.

In the petition and amended petition, appellee accused appellant of having "had sex with so many males that she cannot recall all of their names." Within his response to appellant's anti-SLAPP motion, appellee alleged that appellant was a secret porn star and that her porn "would likely shock the writer of '50 Shades of Grey.'" Appellee also attacked appellant's character in a variety of ways including calling her dirty, horrible, and indecent.

During appellant's deposition, appellee's counsel made a variety of insulting comments towards appellant's counsel. These included calling her "dirty and naughty," stating that she was not "ladylike," and stating "I have daughters about your age, and if they acted this way, and I found out about it, I'd tell them, 'Don't do that. It's rude.'" He also accused her of pulling a "wilted flower routine."

In a reply to appellant's sanctions motion, appellee attached many nude photographs of appellant. These photos are pornographic in nature, depicting appellant fully unclothed and showing multiple closeup shots of her genitals from different angles. In the reply, appellee stated the purpose of filing the photos was due to appellant failing to include them as exhibits to her motion for sanctions, and that appellant likely intentionally excluded the photos because they would be seen as "an embarrassment to [appellant] and her counsel."

The trial court held a status conference on August 24, 2023, regarding issues that had arisen in the case. Specifically, the trial court played two ex parte voicemails left by appellee's counsel to the court's chambers wherein appellee's counsel berated

3

appellant's counsel for an allegedly late filing and also berated the trial court stating, "the [trial] court bends over backwards to help this defendant and her lawyer like the defendant is innocent when the defendant is a pornography person?", "The [trial] [c]ourt seems to be doing everything to bend over backwards to accommodate her and her lawyer and it's causing my guy extreme difficulty, financially and otherwise. And I feel sorry for him. And I'd like the [trial] [c]ourt to be fair to us too," and "And I will also say it's extremely poor docket management." Appellee's counsel also made comments about appellant including, "My client is suffering because of sex assault evil embodied in Baylee Higginbotham," "And so my client, the poor guy, he's having his life ruined by this porn person who takes odious pictures of herself. They've sent us a whole bunch of these videos now in supplemental discovery, and sells them and does other bad things and is an admitted dope user," and "I expect fairness from the [trial] court even if we can't get it from this horrid woman, Higginbotham, who literally would make the whore of Babylon blush. That's how horrible she is. She's the defendant. And her attorneys, who just seem to think rules don't apply to them."

Furthermore, the trial court read an email it received from appellant's counsel which attached an email from appellee's counsel repeating the accusations against the trial court that it was being unfair to appellee, that appellant's counsel was trying to "cram down" a demand on a hearing date, and that appellant was a "pornography person and admitted dope user." The trial court additionally read a response email from appellant's counsel that accused appellee's counsel of bullying behavior and told him to consider the email to be a conference on her sanctions motion. Following the reading of these emails, the trial court reprimanded appellee's counsel for improper communications with the court

4

due to the voicemails and reprimanded appellant's counsel for improperly discussing potential sanctions in her email sent to the court.

At the first hearing regarding appellant's motion for sanctions, the trial court noted that the misconduct discussed at the August 24 status conference had ceased. The trial court stated it would not hear arguments on the motion at that time and proceeded to discuss issues with trial and the inability of the parties to agree on matters. The trial court stated that it would not grant sanctions against either side at that time because both parties were responsible and that it would not issue rulings and did not want to hear evidence on the matters. It further discouraged the filing of additional sanctions motions and stated if the issues continued, "I may sanction both of you so badly that your clients don't get to have a trial. Or the trial will be pushed off endlessly because you're not following the rules." The trial court concluded that it would carry the motion for the rest of the trial. Neither party objected to the decision.

Following the end of trial on August 22, 2024, the trial court held a hearing on appellant's motion to seal records and second amended motion for sanctions. The trial court remarked on the second motion that it believed that both parties' attorneys had "turned things around" and it had "no desire" to sanction anyone. Appellant's counsel presented some argument on the motion, but the trial court responded regarding her personal background as a trial lawyer several decades prior and stated, "It's a rough world. Welcome to trial law." The trial court further opined that there was unacceptable conduct from both sides and denied the motion and signed an order to the same effect. Again, neither party objected to the ruling nor attempted to present evidence. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

"We review a sanction order under an abuse of discretion standard," including a denial of sanctions. *In re Monson Law Firm, LLC*, 714 S.W.3d 256, 266 (Tex. App.—Corpus Christi–Edinburg 2025, orig. proceeding); *Wenger v. Flinn*, 648 S.W.3d 448, 454 (Tex. App.—San Antonio 2021, no pet.). "A trial court abuses its discretion when it acts arbitrarily or unreasonably or without regard to guiding principles." *Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, 622 S.W.3d 74, 90 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.) (quoting *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 242–43 (Tex. App.—Eastland 2019, no pet.)). "In deciding whether the denial of sanctions constitutes an abuse of discretion, we examine the entire record, reviewing the conflicting evidence in the light most favorable to the trial court's ruling and drawing all reasonable inferences in favor of the court's ruling." *Wenger*, 648 S.W.3d at 455.

We cannot substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). The burden is on the party seeking sanctions to prove sanctionable conduct. *Robinson v. Garcia*, 398 S.W.3d 297, 301 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied). We assume that pleadings and other papers are filed in good faith and the party seeking sanctions must overcome this presumption. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *see also Accurate Valve Serv., Inc. v. Gilmore*, No. 13-17-00440-CV, 2019 WL 2065934, at *3 (Tex. App.—Corpus Christi–Edinburg May 9, 2019, pet. denied) (mem. op.).

Appellant sought sanctions against appellee pursuant to Texas Rules of Civil Procedure 13, 199.5, and 215.2, and Texas Civil Practice and Remedies Code §§ 9.012,

10.001, and 10.004, as well as the court's inherent power to sanction. But of note, § 9.012 does not apply to proceedings where § 10.004 or Rule 13 apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 9.012; *see also Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *6 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.). Therefore, we need not consider § 9.012 in this analysis.

## B. Refusal to Hold Evidentiary Hearing

Appellant first argues that the trial court erred by "refusing to hold an evidentiary hearing" prior to denying her motions for sanctions. To elaborate, appellant contends that trial courts are generally required to hold evidentiary hearings on sanctions motions, and that even though there were two hearings on her motions, she was not allowed to present evidence or argument and that her due process rights were violated as a result. Conversely, appellee argues that Texas law does not require evidentiary hearings prior to denying a motion for sanctions and that, in any event, the trial court did hold two hearings regarding the motions.

Several of the rules cited by appellant authorizing a trial court to impose sanctions require notice and a hearing. *See* TEX. R. CIV. P. 13 (authorizing sanctions under Rule 215 for filing frivolous pleadings or motions after notice and hearing), 215.2 (authorizing sanctions for failure to comply with discovery requests after notice and hearing); TEX. CIV. PRAC. & REM. CODE ANN. § 10.003 (requiring notice and opportunity to respond when motion for sanctions pursuant to § 10.002 is filed). This codifies the requirement that sanctions proceedings must comport with due process, including notice and an adequate opportunity to be heard prior to imposing sanctions. *See Mills v. Ghilain*, 68 S.W.3d 141, 146 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.).

7

However, in interpreting Rule 215, the Texas Supreme Court has held that the notice and hearing requirement does not necessarily require an oral hearing. *See Cire v. Cummings*, 134 S.W.3d 835, 843–44 (Tex. 2004). Though appellant relies on authority stating a hearing is required before *imposing* sanctions, the relevant precedent indicates that our Court and our sister courts have held that a hearing is not required before *denying* a motion for sanctions. *See Zuehl Land Dev., LLC v. Zuehl Airport Flying Cmty. Owners Ass'n, Inc.*, 510 S.W.3d 41, 54 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *R.M. Dudley Const. Co., v. Dawson*, 258 S.W.3d 694, 709–10 (Tex. App.—Waco 2008, pet. denied) (imposing sanctions is an abuse of discretion when there is no evidentiary hearing); *but see Ex parte K.S.*, No. 14-23-00114-CV, 2024 WL 237647, at *3 (Tex. App.—Houston [14th Dist.] Jan. 23 2024, no pet.) (mem. op.) ("But Rule 13 does not require a trial court to hold an evidentiary hearing prior to *denying* sanctions."); *Mitchell v. State*, No. 09-20-00230-CV, 2022 WL 2251729, at *4 (Tex. App.—Beaumont June 23, 2022, pet. denied) (mem. op.) ("Under [Rule 13], the trial court is not required to hold an evidentiary hearing before denying sanctions."); *Skinner v. Levine*, No. 04-03-00354-CV, 2005 WL 541341, at *3 (Tex. App.—San Antonio Mar. 9, 2005, no pet.) (mem. op.) ("Rule 13 requires a 'hearing' only before the trial court imposes sanctions."); *Breault v. Psarovarkas*, No. 01-01-00122-CV, 2003 WL 876651, at *6 (Tex. App.—Houston [1st Dist.] Feb. 28, 2003, pet. denied) (mem. op.). Indeed, our Court has specifically opined on this issue in the past. *See Gilmore*, 2019 WL 2065934, at *3 ("However, we have also held that the trial court is not required to hold an oral hearing before *denying* a motion for sanctions."). And we have not found contradicting authority from the Fort Worth Court of Appeals. *See* TEX. R. APP. P. 41.3. Further, the Supreme Court has suggested that an

8

oral hearing is not needed even when imposing sanctions. *See Cire*, 134 S.W.3d at 843–44.

Here, when considering the foregoing authorities, appellant's complaint that it was an abuse of discretion to deny sanctions without an evidentiary hearing is without support. Appellant contends that she "can[not] fathom" why a party seeking sanctions would not be entitled to an evidentiary hearing before denial of the motion. However, the Supreme Court provided a reason when it noted that every "hearing" in the Rules of Civil Procedure does not require an oral hearing. *See id*.

Appellant filed multiple sanctions motions and attached evidence to each. The record indicates that the trial court ruled on appellant's motions after considering the written motions. Further, the decision to sanction a party is discretionary under all the rules that appellant cited to in support of her request for sanctions. *See* TEX. R. APP. P. 13, 215.2; TEX. CIV. PRAC. & REM. CODE ANN. § 10.003. We have held that the hearing requirement is fulfilled where the trial court's order denying the sanctions states that it considered the motions, response, pleadings, and record. *See Santos v. Holzman*, No. 13-13-00273-CV, 2015 WL 3485418, at *11 (Tex. App.—Corpus Christi–Edinburg May 28, 2015, pet. denied) (mem. op.).

The reason trial courts are required to hold evidentiary hearings prior to imposing sanctions under Rule 13 or § 10.001 is to develop evidentiary support for the sanctions in the form of "necessary factual determinations about the party's or attorney's motives and credibility." *Dawson*, 258 S.W.3d at 709. The presence or absence of such evidence is not needed to deny sanctions. *See State v. Forty-Five Thousand & Eight Hundred Ten Dollars & Ten Cents ($45,810.10) in U.S. Currency*, 609 S.W.3d 219, 226 (Tex. App.—

9

San Antonio 2020, pet. denied) (holding it is not abuse of discretion to deny sanctions request). The trial court is not required to sanction any party or attorney except under specific statutes that are not relevant here. Appellant's attempts to use cases unrelated to sanctions to argue that her right to seek sanctions is "unqualified and absolute" are unpersuasive. *See Turcotte v. Trevino*, 499 S.W.2d 705, 723 (Tex. App.—Corpus Christi 1973, writ ref'd n.r.e). And appellant's suggestion that the Court has not resolved the issue due to dicta in one footnote in the *Santos* case is incorrect. *See Santos*, 2015 WL 3485418, at *11 n.17. But we will be clear and explicit that this is not dicta: we again hold, as we discussed in *Gilmore*, that a litigant is not entitled to an evidentiary hearing prior to denial of a motion for sanctions when sought pursuant to Rule 13 or 215.2, or § 10.003. *See Gilmore*, 2019 WL 2065934, at *3.

Appellant asserts in her reply brief that she is also entitled to an evidentiary hearing when seeking sanctions pursuant to a trial court's inherent power to sanction. But appellant cites no caselaw in support of this proposition and we find none. The trial court operates at the apex of its discretion when determining whether to sanction under this power, and it would not comport with this principle to hold that any party would be entitled to an evidentiary hearing. Appellant's complaints of due process violations are not implicated in this context. While we take the need to protect the judicial system from vexatious, unethical, and improper behavior seriously, it is not our place to override the trial court's role by imposing hearing requirements that lack legal basis.

Because we hold that a party is not entitled to an evidentiary hearing prior to the denial of sanctions, we do not reach the issue of whether the hearings that did occur fulfilled the hearing requirement. *See* TEX. R. APP. P. 47.1. We overrule appellant's first

issue.

## C.    Exclusion of Exhibits

In her second point of error, appellant argues that she offered four exhibits "for the purpose of the evidentiary hearing" that she claims were "admitted by implication" but also argues in the alternative that it was error if they were excluded in any manner. Appellant argues the exhibits were admitted because they were attached to her motions for sanctions, the trial court can take judicial notice of items in its file, and the exhibits were admissible as opposing party statements. These exhibits included an affidavit regarding appellant's counsel's attorney's fees and her billing records, several of appellee's filings including his reply to appellant's response to his motion for sanctions, his response to appellant's anti-SLAPP motion to dismiss, the first amended original petition, the deposition notice for appellee's deposition, and deposition excerpts. Appellee responds that appellant failed to offer any of the exhibits at either sanctions hearing, did not obtain rulings at those hearings, and did not make an offer of proof.

Most of appellant's exhibits were appellee's responses, motions, and pleadings already on file with the trial court and thus were part of the trial record without need for a ruling. There is no error regarding these exhibits because the trial court did not exclude them in any sense. The only exhibits attached that were not court filings were appellant counsel's affidavit regarding her billing records in support of the sanction of attorney's fees and the excerpts demonstrating appellee's counsel's conduct during deposition. Thus, our analysis will focus on those two exhibits and whether they were admitted or excluded, and if the trial court committed an error in excluding them.

11

"To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion." *Richmond Condos. v. Skipworth Com. Plumbing, Inc.*, 245 S.W.3d 646, 665 (Tex. App.—Fort Worth 2008, pet. denied); TEX. R. APP. P. 33.1(a). Failure to present such a request waives error. *Id*. A ruling, either express or implied, must be secured. *Id*.

Appellant relies on a memorandum opinion from the El Paso Court of Appeals to argue that her exhibits were admitted by implication. *See Nevarez Law Firm, P.C. v. Perez*, No. 08-22-00131-CV, 2023 WL 4754624, at *4 (Tex. App.—El Paso July 25, 2023, no pet.) (mem. op.). *Perez* cites general caselaw that trial court rulings can be implicit and preserve error if the implication is clear and ascertainable from the record. *See id*. (citing *Hause v. LG Chem, Ltd.*, 658 S.W.3d 714, 720 (Tex. App.—El Paso 2022, pet. denied) (further citations omitted)). But appellant does not explain how *Perez* applies to these particular facts and thus fails to meet the requirements of Texas Rule of Appellate Procedure 38.1(i).

Further, we fail to see any implicit ruling in the record. In *Hause*, the appellant made a similar argument where a trial court issued an order stating that it considered submitted evidence when it ruled but the record was unclear as to which exhibits were explicitly admitted as some were objected to. *See* 658 S.W.3d at 720. Thus, even when exhibits are offered at a hearing, without clear evidence of the implicative ruling in the record, we do not consider there to be an implicit ruling. *See id*. As a result, we cannot say that the trial court either implicitly excluded or admitted the affidavit or deposition excerpts.

12

Attaching those two exhibits to her motions alone is not enough for them to be admitted as evidence and does not preserve error. TEX. R. APP. P. 33.1(a). "Exhibits tendered but not admitted into evidence are not part of the record and cannot be considered on appeal." *Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex. 1990); *see also Credit Suisse Secs. (USA) LLC v. Barnes*, No. 05-23-00520-CV, 2025 WL 823872, at *3–4 (Tex. App.—Dallas Mar. 14, 2025, no pet.) (mem. op.) (discussing circumstances where exhibits attached to motions are not considered evidence); *Ugwa v. Ugwa*, No. 05-17-00633-CV, 2018 WL 2715437, at *2 (Tex. App.—Dallas June 6, 2018, no pet.) (mem. op.) ("Because [the party] never offered them in evidence, [she] cannot rely on the declaration and attached documents as evidence supporting her allegations."). We have specifically held that "[i]n order for the trial court to consider documents as evidence in a rule 13 context, they must be admitted in compliance with the rules of evidence at the evidentiary hearing." *Alejandro v. Bell*, 84 S.W.3d 383, 393 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). For the same reason, her argument that the trial court inherently excluded the exhibits by denying the sanctions motions is without merit.

While we held above that an evidentiary hearing is not required prior to denying a sanctions motion, here, the trial court did hold two hearings on appellant's motions. But appellant failed to offer exhibits at the hearings in any capacity and did not obtain rulings from the trial court where it refused to enter the exhibits into evidence or refused to rule on admission of those exhibits. *See* TEX. R. APP. P. 33.1(a), 33.1(a)(2)(B).

Therefore, we cannot say that the trial court erred by excluding any of appellant's exhibits. Such exhibits were either already on file with the court or appellant failed to seek admission of those exhibits that were not court filings. Appellant's arguments regarding

judicial notice and opposing party hearsay are accordingly irrelevant as appellant did not seek to admit the affidavit or deposition excerpts pursuant to either rule at a hearing and did not obtain a ruling. And as explained below, even if the exhibits were part of the record, they do not create support for the argument that the trial court abused its discretion when denying the motions for sanctions. Accordingly, we overrule appellant's second issue.

## D.    Failure to Sanction

Appellant's third point of error asserts that the trial court abused its discretion when it denied the motions for sanctions based on the underlying merits of the motions. As discussed above, we have already determined that the trial court did not abuse its discretion by failing to hold an evidentiary hearing prior to ruling and that error was waived regarding presentation of the exhibits that were not court filings. While appellant presents five different categories of allegedly sanctionable behavior, we instead examine whether there is any authority supporting the contention that a trial court can abuse its discretion for failing to sanction a party.

Appellee argues that there is no such authority in Texas. Indeed, he cites *Dinkins*, wherein the Fort Worth Court of Appeals stated, "[t]he [movants] cite no authority that sanctions are mandatory under chapter 10, nor do they cite any case in which an appellate court reversed a trial court for not awarding a discretionary sanction." *Dinkins*, 2018 WL 2248572, at *5 (noting "chapter 10 sanctions are permissive, not mandatory"). The *Dinkins* court also held that the trial court did not abuse its discretion for denying sanctions under Rule 13 where the movant failed to secure an evidentiary hearing and failed to object to the lack of such hearing. *Id*. at *4. Because this is a transfer case, even if we found cases from other jurisdictions reversing for failure to sanction, we are obliged

14

to apply *Dinkins* as controlling precedent. *See* TEX. R. APP. P. 41.3. While *Dinkins* does not state it is *impossible* for a trial court to abuse its discretion when denying a sanctions request, it noted that Texas courts have yet to find such a scenario. *See Dinkins*, 2018 WL 2248572, at *5.

Further, our sister courts have all opined similarly to the Fort Worth Court of Appeals. *See, e.g.*, *Forty-Five Thousand & Eight Hundred Ten Dollars & Ten Cents ($45,810.10) in U.S. Currency*, 609 S.W.3d at 226 ("The State does not cite any authority, nor do we find any, in which a trial court was found to have abused its discretion by denying a motion for sanctions."); *see also Campos v. Cweren Law Firm PLLC*, No. 01-22-00718-CV, 2024 WL 971672, at *8 (Tex. App.—Houston [1st Dist.] Mar. 7, 2024, pet. denied) (mem. op.) ("Additionally, we note that Campos, Arnold, and Robertson, in their briefing, have not cited a single case in which an appellate court held that a trial court abused its discretion by declining to impose a punishment for conduct that would be considered sanctionable."); *W. Oaks Storage, LLC v. Guerrero*, No. 14-23-00179-CV, 2024 WL 437984, at *5 (Tex. App.—Houston [14th Dist.] Feb. 6, 2024, no pet.) (mem. op.) ("We note that West Oaks did not cite—and our research did not find—any cases in which an appellate court held that the trial court's denial of sanctions constituted an abuse of discretion."); *Cook v. Izen*, No. 09-17-00025-CV, 2019 WL 385926, at *8 (Tex. App.—Beaumont Jan. 31, 2019, no pet.) (mem. op.) ("We note that when parties have moved for sanctions but the motion was denied, our sister courts have affirmed the rulings, explaining that no abuse of discretion occurred when the trial court denied the motion."). We too have found no cases where a trial court was found to have abused its discretion when denying a request for sanctions. In fact, our Court has previously opined similarly.

*See Allstate Ins. Co. v. Garcia*, No. 13-02-092-CV, 2003 WL 21674766, at *2 (Tex. App.—Corpus Christi–Edinburg July 18, 2003, no pet.) (mem. op.) ("[Appellant] does not cite any authority in which an appellate court reversed a trial court's decision not to impose sanctions under rule 13 or chapter 10, nor have we found any. On the other hand, courts readily affirm a trial court's refusal to impose sanctions.").

Appellant seemingly concedes that there is no Texas precedent reversing a trial court for failure to sanction but argues to hold otherwise here would render our review merely a "rubber stamp" and that courts across the country have reversed denials of sanctions under similar rules. Our review of appellant's precedent brings us to a different conclusion in that many of her authorities are distinguishable. Regardless, those cases are not binding precedent in Texas. While appellant asserts policy arguments on why reversal may be warranted, we cannot buck the precedent of the Second Court of Appeals and find these circumstances for the first time here. *See* TEX. R. APP. P. 41.3.

We do not take the allegations lightly and we appreciate appellant's policy arguments that at some point conduct is so serious that it ought to require sanctions. Based on our review of the record, we are concerned with aspects of the trial court's approach; even if the trial court was convinced that both sides were equally at fault, failing to sanction both parties to avoid being unfair does not fulfill the purpose of our professional rules and allows unprofessional behavior to proceed unchallenged.

We are especially troubled by the nature of some of the accusations. Production of a multitude of nude photographs of appellant by appellee in response to the sanctions motions appears well outside the bounds of reasonableness, even if the nature of the parties' sexual relationship was at issue at trial. Especially as appellee's counsel explicitly

16

stated that filing these photos should be seen as "an embarrassment to [appellant] and her counsel," seemingly demonstrating an intent to humiliate appellant. Likewise, some of appellee's counsel's comments during the proceedings rise above mere vexatious disagreement or zealous representation and were demeaning and improper. Texas attorneys should never accuse each other of pulling a "wilted flower routine," of being "dirty and naughty," or making borderline sexist comments such as telling appellant's counsel she was not "ladylike" and comparing her to his daughter in need of discipline. Likewise, even in a contentious matter such as this, appellee's repeated insulting statements towards appellant directly in filings and hearings such as stating she is a "horrid woman," who would "literally make the whore of Babylon blush," and stating that her porn "would likely shock the writer of '50 Shades of Grey,'" are all inappropriate. Further, the voicemails of appellee's counsel's ex parte calls to the trial court were shocking. We cannot imagine why appellee's counsel thought it within the bounds of the Texas Lawyer's Creed to call the court and accuse it of "extremely poor docket management," and "bend[ing] over backwards" to help one party, and repeatedly impugning appellant's character to court staff.

Considering the conduct of appellee's counsel in this case, our Court will be filing a grievance with the State Bar's Office of Chief Disciplinary Counsel to address this behavior. But our Court will not be the first to break from decades of precedent and start making policy decisions for Texas on whether a trial court should be reversed for failing to sanction. While we may have sanctioned appellee's counsel were we in the trial court's position, that is not the question we answer on appeal. Rather, we answer whether the trial court acted without reference to any guiding rules or principles. *See Pisharodi*, 622

S.W.3d at 90.

Here, the trial court's guiding principle was managing the court's docket and keeping the parties courteous enough towards each other to proceed with trial. The trial court opined that both parties were at fault, but that they had turned things around and managed to have a civil trial. While we disagree with that approach given the nature of appellee's counsel's conduct, and the failure to sanction such behavior does not serve as the deterrence that sanctions are meant to evoke, we cannot substitute our judgment for that of the trial court. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52. Accordingly, we overrule appellant's third issue.

### III.    CONCLUSION

With disappointment over counsel's actions in the proceedings below, we affirm the trial court's judgment.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
16th day of October, 2025.